21 F.3d 422
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 John Robert GIBSON, Plaintiff-Appellant,
v.
MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant-Appellee.
 No. 93-2099.
 United States Court of Appeals, Fourth Circuit.
 Argued March 9, 1994.
Decided April 18, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CA-91-409-MU)
 Wilmer D. Masterson, III, Kilgore & Kilgore, Inc., Dallas, TX, for appellant.
 Douglas E. Hamel, Vinson & Elkins, L.L.P., Houston, TX, for appellee.
 David C. Smith, Allman, Spry, Humphreys, Leggett & Howington, P.A., Winston-Salem, NC, for appellant.
 Shadow Sloan, Vinson & Elkins, L.L.P., Houston, TX; Wil liam C. Livingston, Kennedy, Covington, Lobdell & Hickman, Charlotte, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before WILKINS, Circuit Judge, and SPROUSE and CHAPMAN, Senior Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 John Robert Gibson brought this action against his former employer, The Mutual Life Insurance Company of New York (MONY), alleging violations of Sec. 510 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. Sec. 1140 (West 1985), and Sec. 4(a)(1)-(2) of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. Sec. 623(a)(1)-(2) (West 1985), as well as various state-law causes of action. Gibson appeals on numerous grounds the decision of the district court granting summary judgment to MONY. We affirm.
 
 I.
 
 2
 Gibson was employed by MONY from 1968 until his resignation on September 26, 1989 at age 50. Prior to his resignation, he was the agency manager of MONY's Charlotte, North Carolina office under a contract that provided in pertinent part:
 
 
 3
 No salary is payable after termination of this appointment. In the event that you violate any law or Company rule this appointment is terminable by the Company by notice immediately. In all other cases, that is "without cause", this appointment may be terminated by you or by the Company upon thirty days notice.
 
 
 4
 In February 1989, MONY announced a Voluntary Enhanced Retirement Program (VERP) as a part of an effort to reduce its work force. The VERP was extended to certain MONY employees who were 45 years of age or older and had at least 10 years of service with MONY. Gibson met these qualifications, but the VERP specifically excluded agency managers from participation.
 
 
 5
 In September 1989, Gibson's immediate supervisor, Robert Kramer, informed Gibson of a number of problems he was experiencing with him. Kramer offered Gibson the opportunity to resign from his position in lieu of termination. The two agreed that in return for Gibson's immediate resignation MONY would continue his compensation through February 1990 and Kramer would assist Gibson in making a transition to another position with MONY. MONY subsequently offered Gibson a position as a sales manager in its Winston-Salem office. Gibson declined this position and notified MONY that he was accepting employment with another company effective February 1, 1990.
 
 
 6
 On June 13, 1990, Gibson filed a claim of age discrimination with the Equal Employment Opportunity Commission (EEOC). After investigating Gibson's claim, the EEOC concluded that Gibson was removed from his position due to poor performance and that age did not play a part in MONY's decision.
 
 
 7
 Thereafter, Gibson filed this action, asserting that MONY had violated ERISA by discriminating against agency managers in establishing the VERP and by terminating him in order to prevent him from attaining increased pension benefits at age 55. Gibson also alleged that MONY violated the ADEA by terminating him and excluding him from the VERP because of his age. He further claimed that MONY breached its employment agreement with him by failing to provide adequate notice of his termination and that following his termination, MONY had defamed him and inflicted emotional distress.
 
 
 8
 The district court granted MONY's motion for summary judgment on Gibson's ERISA, ADEA, contract, and infliction of emotional distress claims. Having dismissed all of Gibson's federal claims, the district court, electing not to exercise supplemental jurisdiction over the remaining state-law defamation claim, dismissed it without prejudice.
 
 
 9
 Gibson appeals the decision of the district court granting summary judgment with respect to his ERISA, ADEA, and contract claims.
 
 II.
 
 10
 Summary judgment is proper if, viewed in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the forecast evidence, Ross, 759 F.2d at 364, but it "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). The essence of the inquiry the court must make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). "[I]f the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party," summary judgment should be granted. Id. at 248. We review de novo the decision of the district court to grant summary judgment. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 III.
 
 11
 Section 510 of ERISA provides in pertinent part:
 
 
 12
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.
 
 
 13
 29 U.S.C.A. Sec. 1140. Gibson asserts that MONY's decision to exclude agency managers from the VERP violated this provision. As the dis trict court correctly concluded, ERISA does not require a plan sponsor to offer identical benefits to all employees when it designs a plan. See Trenton v. Scott Paper Co., 832 F.2d 806, 808-09 (3d Cir.1987), cert. denied, 485 U.S. 1022 (1988). Thus, the district court properly granted summary judgment on Gibson's ERISA claim concerning the design of the VERP.
 
 
 14
 Gibson next contends that MONY interfered with his attainment of the increased benefits he would have received if he had worked with MONY until age 55. A claim of interference with attainment of additional benefits by a vested employee is a cognizable claim under ERISA. See Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 237-38 (4th Cir.1991). However, to survive summary judgment, Gibson was required to demonstrate that MONY had a specific intent to interfere with his attainment of additional pension benefits. See id. at 238. We agree with the district court that Gibson offered insufficient evidence to raise a genuine issue of material fact concerning whether MONY intended to interfere with his attainment of pension benefits, and accordingly, summary judgment was proper with respect to this claim as well.
 
 IV.
 
 15
 The district court held that because Gibson failed to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory events as required by 29 U.S.C.A. Sec. 626(d) (West 1985), Gibson's claims that he was terminated due to his age and that MONY's design of the VERP violated the ADEA are barred. Gibson filed his EEOC complaint on June 13, 1990; thus, all claims arising before December 15, 1989 are time barred. The VERP was offered in February 1989, and Gibson resigned his position as the manager of MONY's Charlotte office in lieu of termination in September 1989.
 
 
 16
 Nevertheless, Gibson maintains that the limitations period with respect to his termination claim should run from February 1990, the date when his compensation from MONY ceased, or from December 15, 1989, the date MONY offered him the position in Winston-Salem. Gibson bases his claim of discrimination, however, on his removal from the position of manager of the Charlotte office; therefore, the date he knew that he was leaving this position is the date from which the limitations period begins to run. See Price v. Litton Business Sys., Inc., 694 F.2d 963, 965 (4th Cir.1982).
 
 
 17
 Next, although Gibson did not raise the argument below, he contends that the limitations period for his claim concerning his removal from the position as manager of MONY's Charlotte office should be equitably tolled. See Felty v. Graves-Humphreys Co., 785 F.2d 516, 519 (4th Cir.1986). Even if we concluded that the limitations period was equitably tolled and we reached the merits of Gibson's claim, we would nevertheless conclude that summary judgment was proper. Gibson failed to present any direct evidence that his removal from the position as manager of the Charlotte office was motivated by his age. Moreover, it is undisputed that his replacement in the Charlotte office was also a member of the protected class, and therefore, Gibson failed to raise a genuine issue of material fact with respect to each of the factors necessary to prove a prima facie case of discrimination. See EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir.1992).
 
 V.
 
 18
 Gibson also contends that the district court erred in granting summary judgment on his claim that MONY terminated him without cause and without the notice required by his contract. The undisputed evidence demonstrates that Gibson and MONY bargained for Gibson to resign his position as manager of the Charlotte office on terms more favorable than Gibson would have received if MONY had used its termination procedure. Accordingly, Gibson may not seek to enforce the provisions of his original contract.
 
 VI.
 
 19
 Finally, Gibson asserts that the decision of the district court should be modified to include a statement specifying that he should be given the opportunity to file his defamation claim in state court pursuant to the savings provision contained in North Carolina Rule of Civil Procedure 41(b). See Clark v. Velsicol Chem. Corp., 431 S.E.2d 227, 230 (N.C. Ct.App.), review granted, 436 S.E.2d 371 (N.C.1993). This issue was not addressed below, and we believe that the question should be presented to the district court in the first instance. Conse quently, our affirmance is without prejudice to Gibson's seeking a modification of the order of the district court on this basis.
 
 VII.
 
 20
 We conclude that the district court properly granted summary judgment with respect to Gibson's ERISA, ADEA, and contract claims. Accordingly, we affirm.
 
 AFFIRMED